# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 27, 2012 Session

## PHILIP WAYNE HAMBY v. MYRA RENEE WHEELER

**Appeal from the Circuit Court for Knox County**
**No. 85373      Jerri Bryant, Chancellor**

---

### No. E2011-00872-COA-R3-CV-FILED-OCTOBER 26, 2012

---

This appeal arises from a petition for contempt related to an underlying divorce judgment. Philip Wayne Hamby ("Hamby") and Myra Renee Wheeler ("Wheeler") were divorced by decree of the Circuit Court for Knox County ("the Trial Court"). As part of the terms of the divorce, Hamby was required to turn over to Wheeler a publishing company ("the Business") the two then owned. Wheeler later filed a motion for contempt alleging that Hamby had failed to pay certain necessary taxes on the Business and should be responsible for that tax debt. Wheeler also alleged that, because of the resulting tax lien, the Business was encumbered and Hamby, therefore, owed alimony arrears pursuant to the Trial Court's divorce judgment. The Trial Court held Hamby responsible for the IRS tax debt, and also ordered him to pay back alimony. Hamby appeals. We affirm the judgment of the Trial Court in its entirety.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Margaret Beebe Held, Knoxville, Tennessee, for the appellant, Philip Wayne Hamby.

Danny C. Garland, II, Knoxville, Tennessee, for the appellee, Myra Renee Wheeler.

# OPINION

## Background

This case has a contentious history.[1] Hamby and Wheeler were divorced by order of the Trial Court in November 2004. Wheeler initially was awarded alimony in the amount of $735.00 per month. For the purpose of this appeal, the central issue is ownership of and taxes due on the Business. The Trial Court stated with respect to the Business:

> The final item in this marriage to be divided is the business, Premier Publishing, Inc. and commercial property upon which the business is located. The commercial property is located at 1717 North Broadway, Knoxville, Tennessee. The parties in a mad dash to grab things and call them "mine" failed to recognize the law in that all items acquired during the marriage (and the parties are not divorced at this point) are marital property. There is a controversy with this item as to whether the stock in the corporation was owned by the Defendant, individually, or with her husband.

> The original stock certificate issued to Defendant was not produced in court; however, a copy was produced. The copy of the stock certificate had Mr. Hamby's name misspelled on it, and his name was typed above the line containing Ms. Hamby's name. Plaintiff testified that the stock was given to Defendant in the approximate amount of 1.28 million shares in exchange for her *"sweat equity"* that she placed in the corporation. From the parties' testimony, Defendant had experience in the business, and it was she who taught Plaintiff how to operate the business and sell advertising. This is consistent with the allocation of shares of stock that individuals or employees received in the corporation in consideration for their *"sweat equity"*. The Court finds that this stock is marital property and was acquired during the marriage. It shall be considered jointly owned with the stock held solely in Plaintiff's name.

> In the valuation and evaluation of assets, the Court considered several issues. With regard to the business, Plaintiff testified that he paid $5,000.00 for the one hundred thousand (100,000) shares of Premier Publishing, Inc. owned by Mr. Riggs. Using that as an independent sale (which is not the finding of this Court), the stock value of the corporation would be

---

[1] This contentious history is apparent even though apart from a transcript of a post-trial motion hearing, there are no transcripts in the record.

approximately $65,000.00. On Exhibit B, Plaintiff valued the corporation at $48,000.00. Defendant valued the corporation at somewhere between $500,000.00 and $980,000.00 which included the real property. There was no outside evidence to corroborate either testimony. The parties argued strenuously over ownership of corporate stock. Mr. Gibson, former company CPA, testified on behalf of Defendant that she was the owner of 78% of the stock in her own name, but Plaintiff had wanted to change the certificates of stock and put his name on them. Mr. Gibson refused to do so. Mr. Gibson further testified that the stock certificates in the corporation were in only Defendant's name in an effort to keep the IRS out of the business. Apparently, there is an outstanding debt to the IRS owed by Plaintiff from prior business dealings. Mr. Gibson testified the gross revenue for the corporation for the first quarter of 1998 was $266,787.00 with net revenue in the amount of $75,874.00. He further testified that the figures on the financial statement, Exhibit H, were provided by from [sic] Plaintiff. No copies of tax returns were filed with the court. The Court finds that all stock was acquired during the marriage, and that all stock owned by either or both parties to be a marital asset and hereby divides it accordingly.

There are approximately two million shares authorized to be issued and approximately 1,620,000 shares are issued. The Court finds that the parties are individual or joint owners of 1.38 million shares. There is a great disparity of testimony as to the value of this corporation with the parties each testifying that the commercial <u>real</u> property had value anywhere between $175,000.00 and $500,000.00. Based upon the testimony and proof in this matter or the lack thereof, it is difficult for the Court to value the corporation. The values presented to the Court range from $48,000.00 to $980,000.00. The Court hereby awards the business to Defendant. The Court will accept Plaintiff's valuation of the corporation in the amount of $65,000.00. Defendant will be allowed immediate access to the business and all of the business records. Defendant's alimony from Plaintiff will be reduced to <u>$10.00</u> per month upon Plaintiff vacating the business and turning over all assets unencumbered and undamaged to Defendant. This distribution appears to be the better solution between the two parties who have demonstrated <u>no</u> ability to work together.

As to the real property, the Court hereby orders the real property to be sold. The Court will use the proceeds from the sale of the real property to make an equitable division of the balance of property between the parties. This will not preclude the parties from working out an agreement as to the sale of the real property. If there is no agreement and the real property is not sold

-3-

within ninety (90) days, the Court hereby appoints the Knox County Clerk & Master as Special Commissioner to sell the real property and pay all funds into court after the expenses of sale are paid, including the Special Commissioner's fee pursuant to the statute.

Lastly, each party shall be individually responsible for any debts they failed to disclose on the Master Asset List submitted in this matter.

This matter shall be placed back on the docket for completion by either party after the above sale, but no later than one hundred eighty (180) days from the entry of this Order.

The costs of this cause are taxed to Plaintiff for which execution may issue if necessary.

Wheeler filed a petition for contempt in December 2010. Wheeler alleged in her petition that Hamby had failed to pay taxes owed to the IRS on the Business for the time period before Hamby transferred the assets of the Business to Wheeler, and that he should be responsible for this debt. Wheeler also sought alimony arrears because the condition for a reduction in alimony, Hamby transferring to Wheeler the unencumbered assets of the Business, allegedly never had occurred.

What followed Wheeler's filing of her petition for contempt is the subject of some dispute. Hamby was served. The matter apparently was set for hearing in February. After a telephone conference in February, the hearing was continued to March 8, 2011. On March 3, Hamby filed a motion to dismiss, or, in the alternative, for summary judgment. Hamby alleges that the March 8 hearing was supposed to address only motions rather than be a trial on the merits of the contempt petition. In any event, the contempt case was tried on its merits on March 8, 2011. Later in March 2011, the Trial Court entered its order on Wheeler's petition for contempt, stating:

This cause came before the Honorable Jerri Bryant, sitting by interchange for the Fourth Circuit Court for Knox County, Tennessee, on the 8th day of March, 2011, for final hearing on the Defendant/Counter-Plaintiff's "Notice of Motion and Motion re: Contempt and to Declare Rights Under Court's Order." Present at the hearing was Myra Wheeler, *pro se*, and Philip Hamby, with his attorney. Ms. Wheeler and Mr. Hamby gave testimony.

From the testimony of the witnesses, the statements of counsel and Ms. Wheeler, and a review of the record as a whole, the Court finds as follows:

This case has a long history, with both parties acting *pro se* at times. This has made it difficult for them to understand the procedures that they should abide by in Court. When a *pro se* plaintiff appears in this Court, the Court must read their pleadings in their entirety, and focus especially on the prayer for relief. Ms. Wheeler has requested to hold Mr. Hamby in contempt and for the Court to clarify its intention in the November 12, 2004 Order.

During the divorce, Mr. Hamby had unbridled control of the corporation. He forced Ms. Hamby out, ran the business, physically locked the doors, and didn't let her in. During the litigation, he tried to physically stop discovery. During that period of time, the business failed to pay the appropriate taxes when they became due and payable. This caused the business to incur tax liabilities and suffer penalties. These by operation of law resulted in a lien on the business. While there might not have been a searchable lien, the failure to pay the tax became a lien under IRS rules. Mr. Hamby is responsible for taxes, interest and penalties that accrued until June, 2005. He failed to disclose these taxes and consequences to the court during trial.

As to the issue of alimony, the proof has shown that Mr. Hamby therefore did not deliver the business unencumbered. He was ordered to sign over the business, which he refused until compelled by this court in June, 2005. It was not unencumbered. Therefore, judgment in the amount of $52,460 is appropriate for alimony.

The Court clarifies its Order and the law to hold the person who was running the business at the time, as between these parties, must hold the other one harmless from that debt. Mr. Hamby increased the liability on the business without telling the Court or Ms. Hamby. He should be responsible for this. Mr. Hamby shall hold Ms. Wheeler harmless to the extent that he failed to disclose the debt owed to the IRS, including interest and penalties. He knew that the checks did not get written. He ran the business. He knew what was going on. The 1993 management contract has no bearing on this case. He is responsible for the mess he created.

This may or may not be sufficient as far as the IRS is concerned. The Court does not have the power to bind the IRS.

To prove contempt, Ms. Wheeler had to show 1) a court order that Mr. Hamby disobeyed; 2) that he had the ability to comply; and 3) that he refused.

Ms. Wheeler has not carried her burden of proof on those issues, and dismissal of the contempt is appropriate.

WHEREFORE, the Court holds as follows:

1.      The Motion to Dismiss filed by Mr. Hamby on March 3, 2011 is **denied.**

2.      The Court deems it appropriate to proceed directly to a final hearing on the merits of this case without Mr. Hamby having completed discovery which was filed too late for this hearing. The previous hearing had been continued at the request of Mr. Hamby and a trial date set. Additionally, Mr. Hamby chose a court reporter who had to leave before the court could hear the case. No proof was given of any attempt to get an additional court reporter. The parties waited several hours for the court to try other matters and the issue was not raised again. The Motion for Continuance is **denied.**

3.      Mr. Hamby shall hold Ms. Wheeler harmless for debts owed to the IRS for payroll taxes, interest and penalties owed by Premier Publishing prior to June 1, 2005.

4.      Ms. Wheeler shall be responsible for all payroll taxes, penalties and interest owed to the IRS by Premier Publishing after June 1, 2005.

5.      Mr. Hamby shall pay Ms. Wheeler the sum of $52,460.00 in alimony.

6.      Ms. Wheeler's Motion for Contempt is **denied.**

7.      Costs are taxed against Mr. Hamby.

In April 2011, Hamby filed a motion to alter or amend. Hamby argued, among other things, that the Trial Court lacked jurisdiction to hold him liable for employment taxes owed by the Business. Additionally, Hamby argued that the Trial Court erred "by holding a final hearing in a 63 day-old lawsuit for which Mr. Hamby was potentially liable for $400,000 without granting Mr. Hamby any meaningful opportunity to conduct discovery or present witnesses."

A hearing was held on the motion to alter or amend in August 2011. Counsel for the respective parties made their arguments. A letter dated March 2, 2011 and labeled "**Re: Hamby v Wheeler March 8, 2011 Petition for Contempt**" from Wheeler to Hamby's counsel was introduced, wherein the former stated that, with respect to Hamby's prospective motion to dismiss, "Tomorrow [March 3] is the last day for filing." Hamby's stance was that this letter reinforced his argument that he was to have filed motions by March 3, and that

March 8 was to be a hearing only on motions rather than on the case's merits. However, the same letter also states: "you have indicated that you intend to call witnesses and present evidence . . . ."

At the hearing on the motion to alter or amend, this exchange occurred between the Trial Court and Hamby's counsel:

THE COURT: But you're telling me today that you did not understand that we were having the final hearing on March the 8th?

MS. HELD: That is correct. I represent to this Court that I understood that we were going to be hearing the motion to dismiss.

THE COURT: That you hadn't even filed at that point and the Court told you that whatever motions you needed to file would have to be filed five days, or under the rules, prior to that hearing.

MS. HELD: That is not what the Court told me. The Court told me to file it on March the 3rd.

THE COURT: I specifically gave you a date that said you had to file it by March the 3rd?

MS. HELD: Yes, ma'am.

THE COURT: But you didn't put that down in an order?

MS. HELD: I did not, ma'am. We were on a teleconference and it was coming up very quickly. But there again, Your Honor, I am capable of remembering things incorrectly, but the fact that my opposing party also remembered it the same way makes me feel like that perhaps the Court might be remembering it incorrectly, respectfully.

THE COURT: Oh, I'm going to have to go back and look at the file, because I won't tell you that I don't remember anything. I think it would be unusual for me to say you have to file your motion to dismiss by this day . . . .

Following the hearing, the Trial Court entered its order, stating in part:

As the first basis for the Motion to Alter or Amend, counsel for Mr. Hamby argued that Mr. Hamby's employment contract absolved him of any liability for unpaid employment taxes of Premier Publishing. This document was not produced during the original trial in this matter in 2004. It was further testified and a finding was made during that proceeding (the original trial) that the newspaper was paying Mr. Hamby approximately Six Hundred ($600.00) Dollars per week in income, and he was "running the newspaper." The court found Mr. Hamby's credibility doubtful in several instances during his testimony in the original trial. At the time of the original hearing, the court found any outstanding debt to the Internal Revenue Service at that point in time was the debt of Mr. Hamby. The court awarded the business to the Defendant in this matter and set alimony to be reduced to Ten ($10.00) Dollars per month upon Plaintiff's vacating the business and turning over all assets unencumbered and undamaged to Defendant. The court finds no credibility in this alleged employment document which was never produced at the original trial in this matter and appears to be self-serving at this point.

As to the second issue, it is Mr. Hamby's position that as a matter of law he turned over the business to the Defendant unencumbered. The court finds that there is a debt to the Internal Revenue Service and therefore finds against him on this issue.

Next, Mr. Hamby alleges this court abused its discretion by holding a final hearing without granting him any meaningful opportunity to conduct discovery or present witnesses. This matter was filed as an emergency petition on the 1st day of December, 2010. Mr. Hamby was served on January 20, 2011. Ms. Wheeler then filed a Notice of Motion and Motion Re Contempt on January 14, 2011. This matter was set on February 8, 2011. Mr. Hamby's counsel entered an appearance on February 7, 2011 and telephoned to request a continuance on behalf of Mr. Hamby which was granted via conference call. The court reset this matter to a date agreeable by all parties, being March 8, 2011.

Ms. Wheeler had asked the court to interpret the November, 2004 Order to specifically hold Mr. Hamby responsible for all taxes owed by Premier Publishing, Inc. and to determine the amount of alimony owed by Mr. Hamby. Mr. Hamby raised the issue that the court cannot make him personally responsible for corporation taxes. On that issue, the court agrees. It has been provided no authority to do so other than as stated in the divorce decree where Mr. Hamby is to hold Ms. Hamby (Wheeler) harmless from the debt. The

court did require Mr. Hamby to hold Mrs. Wheeler harmless from any and all debts that were not properly paid by the corporation at the time he was running it and while he locked her out. This occurred during the parties' separation and ran until the time he turned the business over to her. Mr. Hamby's failure to disclose any additional debts at the time of the divorce hearing was material and he is therefore, pursuant to page 11 of the original court Order, responsible for that debt.

Mr. Hamby on March 3, 2011 filed a Motion to Dismiss or in the alternative for Summary Judgment which Mr. Hamby knew was not timely in light of the agreed trial date set for March 8. The court denied the Motion for Summary Judgment as untimely and denied the Motion to Dismiss. Ms. Wheeler on March 8 filed an Objection to Respondent's Motion to Dismiss. The court is attaching as part of this Order the Rule Docket from the 4th Circuit for Knox County, Tennessee.

The court can only go by recollection as to the issue of the court reporter. This court recalls being advised the morning of the hearing that the court reporter may not be able to stay until such time the case could be heard. It was the afternoon and after a lengthy docket that the court reached this case.

Counsel for Mr. Hamby did not request a continuance on the basis that no court reporter was present. This court did not summarily deny any such Motion.

Based on no request to continue, the court understood the case was to proceed as previously agreed. Therefore, the Motion to Alter or Amend is granted in part and denied in part.

Hamby appeals the judgment of the Trial Court.

## Discussion

We restate the issues Hamby raises on appeal as follows: 1) whether the Trial Court erred in conducting a hearing on the merits when it did; 2) whether the Trial Court erred in holding Hamby liable for certain of the Business's unpaid taxes; and, 3) whether the Trial Court erred in awarding Wheeler back alimony on the basis that Hamby had not turned over the assets of the Business unencumbered. For her part, Wheeler asks for attorney's fees on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We are reviewing certain issues that concern the discretion of the Trial Court. Our Supreme Court has discussed the abuse of discretion standard:

> Abuse of discretion is found " 'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.' " *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010) (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. See *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Henry*, 104 S.W.3d at 479. Instead, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.' " *Eldridge*, 42 S.W.3d at 85 (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

*Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012).

We first address whether the Trial Court erred in conducting a hearing on the merits when it did. Hamby argues that he was rushed to trial without sufficient time for discovery even though he believed there was, in fact, only going to be a hearing on pending motions on March 8, 2011. Wheeler contends the March 8, 2011 was intended all along to be a hearing on the merits.

We are constrained by the record in this matter. To properly address this issue, we will review briefly the timeline of relevant events as reflected in the record. The parties were divorced in 2004. Hamby was ordered to turn over the assets of the Business, unencumbered, to Wheeler. In December 2010, Wheeler filed a petition for contempt. Originally set for February, the hearing was continued to March 8, 2011. Hamby filed a motion to dismiss on March 3, 2011.

As best we can discern from the record, this matter was set to be heard on March 8, 2011. After a careful review of the record, we cannot find any evidence that the

Trial Court instructed Hamby or his counsel that the March 8, 2011 hearing was going to address only preliminary motions. Respectfully, the representations of Hamby's counsel are insufficient as a basis for finding reversible error as to this issue. As for the letter introduced at the hearing on the motion to alter or amend, we find that this letter weighs as much towards Wheeler's position as Hamby's. Wheeler in this letter not only states that Hamby's counsel had indicated she intended to call witnesses but Wheeler also requested a witness list and "any evidence you intend to introduce." This language strongly suggests that the hearing on March 8, 2011 was to be on the merits.

It is relevant that the March 8, 2011 hearing was not a trial resulting from the filing of a new lawsuit. The hearing instead was a hearing on Wheeler's petition for contempt concerning Hamby's alleged failure to comply with the Trial Court's original divorce decree. We find nothing in this record showing any abuse of discretion by the Trial Court in its decision to proceed with a hearing on the merits on March 8, 2011. The Trial Court acted within its discretion by addressing the motions and then proceeding with the hearing on the merits on the same date. We find no reversible error in the Trial Court's decision to proceed with this matter on the merits as it did on March 8, 2011.

Having determined that the Trial Court properly addressed the merits of this case, we next address whether the Trial Court erred in holding Hamby liable for certain of the Business's unpaid taxes. Hamby argues that the Trial Court lacked jurisdiction to adjudicate a tax question as presented by this case. Trial courts, however, routinely assign tax debts in divorce cases. We find nothing unusual or illegal about such an assignment. In the case of *Warren v. Warren*, No. M2009-00042-COA-R3-CV, 2010 WL 744416 (Tenn. Ct. App. Mar. 3, 2010), *no appl. perm. appeal filed*, for example, the trial court divided up the tax liabilities of a couple that involved a family business they operated. We affirmed the trial court's division of the tax liabilities in that case, holding that the "court's division of the $30,200 tax liabilities and the $200,000 from the parties' joint account was fair and equitable under the circumstances." *Warren*, 2010 WL 744416, at *5. We emphasize that we recognize, as did the Trial Court, that we cannot bind the IRS in this case. We do not propose to dictate either tax liability or tax collection to the IRS. Instead, we are affirming the Trial Court's assignment of a debt as between these two parties under the terms of the original divorce decree and as later clarified by the Trial Court. That much is within our power.

Hamby also argues that the Trial Court erred in excluding a hold harmless agreement signed by Hamby in 1993 that purported to shield him from personal liability for the Business's tax debts. The Trial Court specifically addressed this document in its order on Hamby's motion to alter or amend: "The court finds no credibility in this alleged employment document which was never produced at the original trial in this matter and

appears to be self-serving at this point." We have no basis to overturn this determination of the Trial Court regarding the document in question.

Finally, we address whether the Trial Court erred in awarding Wheeler back alimony on the basis that Hamby had not turned over the assets of the Business unencumbered. Specifically, Hamby argues that the Trial Court, "in essence, [was] ordering him to turn over his stock, since stock is the only indicia of ownership an individual has in a corporation. Mr. Hamby turned over his ownership interest in the corporation, and it is not disputed that the stock was not 'encumbered' at the time of transfer." We believe this is an overly restrictive reading of the Trial Court's original order, which we quote from:

> The Court hereby awards the business to Defendant. The Court will accept Plaintiff's valuation of the corporation in the amount of $65,000.00. Defendant will be allowed immediate access to the business and all of the business records. Defendant's alimony from Plaintiff will be reduced to $10.00 per month upon Plaintiff vacating the business and turning over all assets unencumbered and undamaged to Defendant. This distribution appears to be the better solution between the two parties who have demonstrated no ability to work together.
>
> \*\*\*
>
> Lastly, each party shall be individually responsible for any debts they failed to disclose on the Master Asset List submitted in this matter.

In its order on the petition for contempt, the Trial Court further explained: "the proof has shown that Mr. Hamby therefore did not deliver the business unencumbered. He was ordered to sign over the business, which he refused until compelled by this court in June, 2005. It was not unencumbered." Our review of the Trial Court's orders shows this to be the correct interpretation of Hamby's obligations under the Trial Court's November 2004 order and his failure to fulfill them. Hamby's failures gave rise to tax liens that rendered the Business encumbered. Thus, as per the Trial Court's November 2004 order, Hamby is responsible for that debt and for the alimony arrears that accrued as a result of his failure to deliver the Business unencumbered. We affirm the judgment of the Trial Court.

In the exercise of our discretion, we decline to award either party attorney's fees.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Philip Wayne Hamby, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE